NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3496
_____

ROMAN (RON) TYMIAK,
                                  Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-18-cv-01559)
District Judge: Honorable Marilyn J. Horan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 1, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, *Circuit Judges*.

(Opinion Filed: January 26, 2021)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge.*

Roman Tymiak seeks review of the District Court's order dismissing, pursuant to Fed. R. Civ. P. 12(b)(6), his complaint in which he sought review of the calculation of his Social Security retirement benefits. In addition, the District Court found that none of the other claims he raised fell within its jurisdiction. Before us, he argues that his Social Security Administration ("SSA") Earnings Record ("ER") is incorrect and that jurisdiction exists over his other claims. For the reasons stated below, we will affirm the order of the District Court.[1]

## I. BACKGROUND

### A. Administrative Proceedings

Tymiak filed for retirement insurance benefits on April 21, 2015. Dissatisfied with the award of benefits he received on April 27, 2015, he sought reconsideration on June 24, 2015. The initial determination was upheld. He then sought review before an Administrative Law Judge ("ALJ").

Before the ALJ, Tymiak argued that his ER did not accurately reflect his income for the period of 1991 through 1995. He identified three sources of alleged earnings that he argued should have been included in his ER: (1) royalties from a copyright;[2] (2) funds

---

[1] While we are affirming the District Court, we do so on different bases than those set forth by the District Court. "Generally, we may affirm on any ground supported by the record[.]" *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 116 (3d Cir. 2020).

[2] In 1989, Tymiak registered a copyright for a computer program and database he developed, titled "Credit Union Member Accounting Automated Database." According to Tymiak, several credit unions have used the database. He claimed that between 1986 and 1999 he received $180,000 from various credit unions for their use of his copyright.

from the settlement of *Tymiak v. Public Service Plaza Federal Credit Union*, No. 2:90-cv-1202-AMW (D.N.J.); and (3) income from a trust established by his father.[3]

Tymiak argued that, based on these three sources of income, he was an employee, as defined in 42 U.S.C. § 410(j)(2) and (j)(3)(C).[4]  In support of his claim, Tymiak submitted tax returns from 1991 through 1995.[5]  The ALJ noted that Tymiak held himself out in these tax returns as "a consultant for computers and software and doing business as North Hills Computer Associates."  (App. 62a.)  Tymiak reported no wages or self-employment income on these returns.  Tymiak also submitted invoices sent by North Hills Computer Associates to various credit unions, including the Ukrainian Selfreliance of Western Pennsylvania Federal Credit Union ("Ukrainian Credit Union").

The ALJ found that Tymiak provided no proof as to wages in the years he claims

---

[3] Before the ALJ, Tymiak also attempted to argue that he was entitled to widower's benefits based on his alleged common law marriage to Lillian Wikman-Morse, but the ALJ noted that this issue was not before her.  Tymiak had previously notified the SSA that "[h]e could not provide proff [sic] of common law marriage.  He did not wish to pursue this option."  (S. App. 284.)

[4] Subsection (j)(2) defines an employee as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee," while subsection (j)(3)(C) defines an employee as "any individual (other than an individual who is an employee under paragraph (1) or (2) of this subsection) who performs services for remuneration for any person . . . as a home worker performing work, according to specifications furnished by the person for whom the services are performed, on materials or goods furnished by such person which are required to be returned to such person or a person designated by him."  42 U.S.C. § 410(j)(2), (j)(3)(C).

[5] For 1992, Tymiak only submitted a Schedule C form.  In addition, Tymiak submitted tax returns for 1987, 1988, and 1996-1998 before the District Court.

he was an employee. In fact, according to the ALJ, the tax returns submitted by Tymiak "show[ ] he held himself out as a self-employed consultant and that he had business losses [for tax years 1991 through 1995] and reported no wages." (App. 63a.) The ALJ also found that Tymiak "submitted no proof that his earnings record is incorrect" and that no exception to the statute of limitations applied.[6] *Id.* Based on these findings, the ALJ concluded that Tymiak's "monthly benefit payment has been correctly calculated" and affirmed "the determination of the lower level." (App. 63a.)

## B. District Court Proceedings

Tymiak sought review before the District Court. In his complaint, Tymiak presented five counts in a somewhat rambling and unclear manner. In addition, Tymiak's arguments are not well-formulated and change with every document he files. Thus, the complaint poses significant challenges in discerning the substance and import of each of the claims.

Count I alleges fraud on the court in *Tymiak v. United States*,[7] No. 2:98-cv-01633

---

[6] Section 405(c)(4) of title 42 allows for correction of "any item of wages or self-employment income" within the time limit established by 42 U.S.C. § 405(c)(1)(B). That time limit is "a period of three years, three months, and fifteen days." 42 U.S.C. § 405(c)(1)(B).

[7] The District Court and the government refer to this case as *Tymiak v. Wiltshire*. However, the docket report and documents from that case filed as exhibits before the District Court use *Tymiak v. United States* as the caption.

(W.D. Pa.)[8] and Tymiak's disbarment proceedings in Minnesota, Order C6-82-900.[9]

Count II is titled as a claim for a "Class-of-One Equal Protection of Fundamental Rights." (App. 38a.) According to Tymiak, the Director of the Minnesota Lawyers Professional Responsibility Board ("MLPRB"), employees of the NCUA, Michael Komichak,[10] and James Herb[11] acted in concert "to unlawfully cause the termination of [Tymiak's] employment and to stigmatize his membership in a local credit union[.]" (App. 39a.) This count exemplifies the difficulties associated with attempting to decipher Tymiak's submissions. While the District Court interpreted this count as an equal protection claim arising directly under the Fifth Amendment, we find that this count attempts to articulate a claim pursuant to 42 U.S.C. § 1983 based on Tymiak's allegation

---

[8] In 1997, the Ukrainian Credit Union terminated its relationship with North Hills Computer Associates. Apparently, in response to this termination, Tymiak sued the United States, Diane L. Wiltshire, who was an employee of the National Credit Union Administration ("NCUA"), and the NCUA Board in state court. This action was removed to federal court. The District Court granted the government's motion for summary judgment in February 2000.

[9] In 1982, Tymiak was suspended from the practice of law in Minnesota. In 1984, Tymiak was disbarred there. *In re Petition for Disciplinary Action Against Tymiak*, 343 N.W.2d 291 (Minn. 1984). On January 24, 1983, Pennsylvania imposed reciprocal discipline and suspended him. The record reflects no subsequent action in the Pennsylvania disciplinary proceedings.

[10] The complaint lists Mr. Komichak's first name as Michael, but the letter written by Mr. Komichak on December 12, 1997 to Tymiak regarding Tymiak's consultant services shows his name as Raymond M. Komichak. Mr. Komichak was the director of the Ukrainian Credit Union.

[11] Mr. Herb is apparently an attorney in Pittsburgh who, in 1998, provided an IRS 1099-MISC form to Tymiak showing a payment of $2,500 as non-employee compensation. This income was not reported on Tymiak's 1998 tax return.

5

that "state actors . . . acting under color of law" violated his Fifth Amendment rights. (App. 38a.)

Count III claims that the failure to consider income Tymiak allegedly earned from a family trust, as well as income allegedly earned as a home worker but paid after the death of his employer, was a violation of his due process rights.

Count IV alleges the SSA miscalculated his earnings by failing to account for (1) royalties allegedly earned by Tymiak from his copyright and (2) payment from a settlement agreement entered into in May 1992 in the case of *Tymiak v. Public Service Plaza Federal Credit Union*, which related to the copyright.[12] He also seeks a declaration that his copyright is a work for hire.

Finally, Count V seeks to remove the Minnesota disbarment action to the District Court.

Before the District Court, the Commissioner moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In addition to his opposition to the motion to dismiss, Tymiak filed two motions. The first sought to place interpleader funds in the District Court's registry and file a "supplemental complaint in the nature of interpleader."[13] (S.

---

[12] Tymiak states that he reported the $22,000 he received from the settlement on his tax form 4797 in 1992, but that document was not included in the exhibits provided to the District Court.

[13] In his motion, Tymiak claimed he obtained $60,000 from a family trust and that the Commissioner, the Director of the MLPRB, the Disciplinary Board of the Supreme Court of Pennsylvania, or the NCUA may be entitled to some or all of his funds. Tymiak asserted that the $60,000 is the correct amount of taxes he should have paid regarding his self-employed income, while the alleged claims of the two disciplinary boards arise from

6

App. 35.)  The second motion sought remand, pursuant to 42 U.S.C. § 405(g).  The

District Court referred all three motions to a magistrate judge.

In a report and recommendation ("R&R"), the magistrate judge recommended that

the motion to dismiss be granted.  Relying on *Nichole Medical Equipment & Supply, Inc.*

*v. TriCenturion, Inc.*, 694 F.3d 340 (3d Cir. 2012), the magistrate judge concluded that

the District Court lacked jurisdiction over the claims in counts I, II, III, and V because

those claims had not been raised before the ALJ and, as a result, were not exhausted.  As

to Count IV, the magistrate judge recommended granting the motion to dismiss because

Tymiak's claims related to correcting his ER were barred by the statute of limitations.

The R&R also recommended denying Tymiak's other motions.

Tymiak filed objections to the R&R, along with three additional motions.  The

first motion sought disqualification of the Commissioner's counsel.  Tymiak's second

motion sought to vacate the Pennsylvania and Minnesota disciplinary orders.  Tymiak's

third motion sought "a de novo determination of matters referred to magistrate judge, or,

in the alternative, to defer consideration of any dispositive matters" until the

disqualification motion was decided.  (S. App. 245.)

Pursuant to 28 U.S.C. § 636(b)(1), the District Court reviewed the R&R de novo.

After considering the R&R and reviewing Tymiak's objections, the District Court

adopted the R&R as the opinion of the Court, as supplemented in the opinion and order.

The District Court dismissed Tymiak's three additional motions as moot.  Tymiak now

---

his disciplinary proceedings in the early 1980s.  Tymiak provides no explanation as to the
alleged claim that the NCUA may have an interest in these funds.

appeals.

## C. Appeal to This Court

On appeal, Tymiak emphasizes the point that with respect to the SSA it is the ER that has "primacy," "not the record of taxation of those earnings." Appellant's Br. 8. According to Tymiak, "[t]he ALJ and the district court erred as a matter of law by basing their decision[s] on an erroneous, prejudicial and discriminatory construction of 'earnings' and 'contributions to the national economy.'" *Id.* at 8–9. He seeks amendment of his ER to include earnings from his copyright and distributions from various trusts.[14] Tymiak also argues that "[t]he ALJ failed to meet her duty to develop the record by not even considering a 'scintilla' of [his] documentary evidence." *Id.* at 15.

Tymiak raises a congeries of other arguments on appeal, most of which have no bearing on the case before us. The arguments he raises with respect to the Court's jurisdiction and the ALJ's review of the evidence will be discussed below. Any and all other arguments are deemed to be waived, having never been raised before the District Court. "We generally do not consider arguments raised for the first time on appeal . . . ." *Orie v. Dist. Att'y Allegheny Cnty.*, 946 F.3d 187, 195 (3d Cir. 2019) (quoting *Gardner v. Grandolsky*, 585 F.3d 786, 793 (3d Cir. 2009)). Tymiak's failure to provide specificity in his pleadings makes the task of identifying his claims a fool's errand.

## II. JURISDICTION

We review de novo the District Court's decision that it lacked jurisdiction over

---

[14] Before the ALJ, Tymiak offered evidence related to only one trust that was established by his family.

8

Counts I, II, III, and V.[15]  *Metro. Life Ins. Co. v. Price,* 501 F.3d 271, 275 (3d Cir. 2007).

In reaching the conclusion it lacked jurisdiction over these claims because Tymiak failed

to exhaust them, the District Court relied on *Nichole Medical*, 694 F.3d 340.  By doing

so, the District Court erred.

     *Nichole Medical* "originate[d] from relationships that were created under the

Medicare Act, 42 U.S.C. § 1395 *et seq.*"  694 F.3d at 342.  The Medicare Act

incorporates the judicial review provisions set forth in 42 U.S.C. § 405(g) and (h), with

the caveat "that, in applying such provisions with respect to this subchapter, any

reference therein to the Commissioner of Social Security or the Social Security

Administration shall be considered a reference to the Secretary or the Department of

Health and Human Services, respectively."  42 U.S.C. § 1395ii.  Therefore, *Nichole*

*Medical*'s requirement that all claims be exhausted before the Secretary before being

raised in the courts means that claims made in proceedings pursuant to the Medicare Act

must be presented to the Secretary of Health and Human Services.  *Nichole Medical*, 694

F.3d at 349.

     Unlike the exhaustion requirement set forth in *Nichole Medical* for Medicare

cases, claimants in Social Security cases are only required to present their claim for

benefits to the Commissioner.[16]  *See*, *e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 328

---

[15] As discussed below, we agree with the District Court that there is no jurisdictional bar to Count IV.

[16] We recognize that the Social Security Act requires exhaustion of the administrative process, but that process does not require issue exhaustion.  20 C.F.R. § 404.900(a) (setting forth five steps in the administrative review process); 20 C.F.R.

(1976) ("The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary."). Tymiak has clearly done so.

Further, neither we nor the Supreme Court have recognized an issue exhaustion requirement in Social Security cases. *Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."); *Cirko ex rel. Cirko v. Comm'r Social Security*, 948 F.3d 148, 153 & n.3 (3d Cir. 2020) ("[T]here is no statutory or regulatory [issue] exhaustion requirement that governs SSA proceedings."). Based on that lack of statutory or regulatory guidance, we have observed that "whether we should impose an exhaustion requirement [in Social Security cases] 'is a matter of sound judicial discretion.'" *Id.* at 153 (quoting *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980)).

Even if we were to exercise our discretion here and impose an issue exhaustion requirement, we would find that Tymiak exhausted the issues raised in Counts I, II, and V. In his Request for Reconsideration, Tymiak presented the issues raised in those counts to the Commissioner. Nonetheless, as we explain below, the District Court lacked jurisdiction over Counts I, II and V. With respect to Count III, to the extent Tymiak

---

§ 404.900(b) (noting that if a claimant "do[es] not take the next step within the stated time period, [the claimant] will lose [his or her] right to further administrative review and [his or her] right to judicial review, unless [the claimant] can show us that there was good cause for [his or her] failure to make a timely request for review"); *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (discussing exhaustion of administrative remedies). The procedural history here makes clear that Tymiak properly exhausted his administrative remedies.

argues the ALJ erred in rejecting and/or disregarding some of his evidence, we will review that question on the merits.

In Count I, Tymiak alleges fraud on the court in *Tymiak v. United States*, which was closed in 2000. In order to obtain relief based on fraud on the court, Tymiak should have filed a motion pursuant to Fed. R. Civ. P. 60(d)(3) to set aside the judgment in the original case, rather than adding a count in a new complaint. We are therefore unable to review this issue.[17]

The § 1983 claim in Count II is clearly untimely. The action forming the basis of this claim—the termination of North Hills Computer Associates' services—occurred on June 30, 1998. The statute of limitations period for this alleged § 1983 due process violation is two years. *See, e.g.*, *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." (internal citations omitted)). Therefore, Tymiak's cause of action, which accrued approximately twenty years ago, is barred by

---

[17] Even if we were able to address this count, we would dismiss it pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim. To demonstrate fraud on the court, "there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005) (announcing the legal test for such actions for the first time, because "[a]ctions for fraud upon the court are so rare that this Court has not previously had the occasion to articulate a legal definition of the concept"). In making this claim, Tymiak points only to the inclusion of the Minnesota disbarment order as an exhibit in the court of record in *Tymiak v. United States*. He offers no explanation as to how inclusion of a valid order from Minnesota constitutes intentional fraud that somehow deceived the court.

the statute of limitations.

Count V seeks to remove Tymiak's Minnesota disbarment action to the District Court. Under the clear language of the statute, only pending cases can be removed. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). Since the Pennsylvania suspension became final in 1983 and the Minnesota disbarment proceedings terminated in 1984, there are no pending actions that can be removed to the District Court.

Tymiak propounds numerous additional theories to establish some jurisdictional foothold, none of which succeed. Specifically, he cites to mandamus, the Rules of Decision Act, the collateral order doctrine, the All Writs Act, the *Erie* doctrine, and federal question jurisdiction. In rapid succession, Tymiak makes conclusory statements that do nothing more than recite the existence of these legal theories. Tymiak provides no analysis to demonstrate the relevance or application of any one of these doctrines to his claims; he merely names the doctrines, provides short definitions of each, and proceeds to the next section of his brief.

An appellant's brief is required to contain argument, which must include "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A); *see also* 3d Cir. L.A.R. 28. Cursory treatment of an issue is insufficient to preserve the issue on appeal and issues treated in only a perfunctory manner are considered forfeited. *See*

12

*Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 338 (3d Cir. 2018) (noting that plaintiff "forfeited . . . theories by not fully briefing them on appeal"); *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) ("[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing."); *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006) (noting that "passing and conclusory statements do not preserve an issue for appeal").

None of Tymiak's references to the myriad jurisdictional theories satisfy this requirement. Tymiak engages in no analytical reasoning and provides no explanation for his positions.

With respect to Counts III and IV, the District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

## III. STANDARD OF REVIEW

We review de novo the District Court's order granting the motion to dismiss. *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010). "[W]e must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record." *Rutherford*, 399 F.3d at 552. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).

IV. DISCUSSION

**A. Substantial Evidence**

Turning to the merits of Tymiak's arguments on appeal, the substance of those arguments appears to be a claim that the ALJ did not consider evidence of income from a trust, his work as a home worker, and royalties from his copyright. Tymiak also argues before us that the ALJ failed to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Appellant's Br. 25 (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)).

Contrary to Tymiak's arguments, the ALJ considered the evidence he presented. Unfortunately for Tymiak, none of the many pages of documentary evidence he provided to the ALJ showed he had any income as a home worker or from royalties from his computer program. The tax returns from 1987, 1989, 1991, 1993, 1994, 1995, 1996, 1997, and 1998 he submitted as evidence had no entries on the lines for wages and royalties.[18] Tymiak provided no other evidence showing that he had received any income from either of these sources.

To the extent he claims Ms. Morse's will evidences intent to compensate him after her death, it does not. The will makes no mention of Tymiak. To the extent Ms. Morse notarized Tymiak's application for bar admission, that is not evidence of income.

Tymiak's argument as to the ALJ's rejection of his evidence of the family trust being established to compensate him as a home worker also fails. "The ALJ must

---

[18] For 1992, Tymiak only submitted a Schedule C, and not a purportedly complete tax return.

consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ did just that. With respect to the family trust, the ALJ observed that "there is nothing in [the] record to support" Tymiak's assertion "that payments out of a trust fund should be considered wages, since he believed his father, who was president of one of the credit unions, meant this to compensate him for the loss of income from his copyright." (App. 62a.) Further, "since the creator of the trust was a relative, it is equally likely that the monies in the fund were from his father's assets and meant to support [him] after the death of his parent." *Id.*

We, like the ALJ, cannot find any evidence to support Tymiak's argument that the proceeds of the family trust were meant to be compensation for Tymiak's service as a home worker. Not only that, but the trust documents submitted by Tymiak indicate the trust was established in 2009, well after the years 1991 through 1995, which was the time period for which Tymiak sought review before the ALJ.

We conclude that the ALJ carefully and thoroughly explored all of the relevant facts and correctly concluded that Tymiak's monthly benefit payment has been correctly calculated. Further, since Tymiak provided no evidence of any wages, royalties, or self-employment income, we need not address his arguments as to the exceptions to the statute of limitations for correction of an ER set forth in 42 U.S.C. § 405(c)(5)(C) and (c)(5)(E).

## B. Motion to Disqualify Counsel

Tymiak argues that the District Court erred by dismissing as moot his motion to disqualify the entire United States Attorney's Office (USAO) for the Western District of

Pennsylvania as the Commissioner's counsel. Tymiak sought disqualification of the USAO for "Conflict of Interest, Self-Interest, the Advocate Witness Rule and Imputed Structural Ethical Breaches." (Appellant's Br. at 39.) Specifically, Tymiak alleged violations of (i) the witness-advocate rule, Pa. R.P.C. 3.7(b); (ii) attorneys knowingly making false statements, Pa. R.P.C. 4.1; (iii) conflicts of interests to current clients, Pa. R.P.C. 1.7; and (iv) imputation of conflicts of interests to a lawyer's firm, Pa. R.P.C. 1.10. As we explain below, we will affirm the District Court.

We review the District Court's denial of a motion to disqualify counsel for abuse of discretion. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999); *cf. United States v. Bellille*, 962 F.3d 731, 738 (3d Cir. 2020) ("Questions regarding attorney appointment and withdrawal are committed to the District Court's sound discretion, and its determination is guided by the professional rules of conduct."). "However, to the extent that the questions underlying the disqualification motion are purely legal . . . our review is plenary." *Lazy Oil*, 166 F.3d at 588.

Tymiak's motion to disqualify cited several bases for the disqualification, including an alleged conflict of interest. His "claim of . . . [a] conflict of interest calls into question the integrity of the process in which the allegedly conflicted counsel participates." *Grimes v. District of Columbia*, 794 F.3d 83, 86 (D.C. Cir. 2015). Because of that, the court must resolve the motion to disqualify "before it turns to the merits of any dispositive motion." *Id.* Here, however, the District Court found it lacked jurisdiction over four of the claims in the complaint and that the fifth claim was barred by the statute of limitations. Therefore, the District Court could not, and did not, reach the

merits of the case. Once the District Court concluded it lacked the ability to review the merits of the case, dismissing as moot the remaining motions, including the motion to disqualify counsel, was correct. We will therefore affirm.

## V.  CONCLUSION

For the reasons stated, we will affirm the District Court's order.